OPINION
{¶ 1} Defendant-appellant, Carl Lindsey, appeals the decision of the Brown County Court of Common Pleas denying his motion for a new trial. We affirm the decision of the trial court.
 {¶ 2} In the early morning hours of February 10, 1997, appellant was at Slammers Bar near Mt. Orab along with Kathy Kerr, Kenny Swinford, A.J. Cox, and Joy Hoop, one of the bar owners. According to the testimony at trial, Joy had wanted her husband, Donald Ray "Whitey" Hoop, dead, and that night appellant told her "he would do him in." Joy then handed a small gun to appellant, and appellant left the bar. Kathy Kerr also decided to leave the bar at that point, but heard a banging noise. As she left, she saw Whitey lying on the ground, covered with blood, and appellant standing by the door. According to investigators, Whitey had been shot once in the face while seated inside his vehicle. He apparently then left his vehicle and remained in the parking lot where he was shot again in the forehead. Upon seeing Whitey on the ground, Kerr immediately left for her home, which was only a few hundred feet away. Appellant followed her in his pick-up truck, and she allowed him into her trailer to take a shower.
 {¶ 3} At approximately the same time that these events were occurring, Brown County Deputy Sheriff Buddy Moore was on patrol and passed Slammers Bar. He noticed a suspicious pickup truck in the parking lot and followed it from the bar south to the Kerr residence. A few minutes later he returned to the bar after receiving a police dispatch indicating that a shooting had been reported at Slammers. On the way, Moore noticed a southbound car pass him at a high rate of speed. When he arrived at Slammers, he found Whitey Hoop's body lying in the parking lot. When backup arrived, Moore instructed a state trooper to go to Kerr's trailer, look for the pick-up, and make sure that no one left the premises. Moore also left for Kerr's trailer.
 {¶ 4} When Moore arrived at the Kerr residence, he found appellant in the bathroom, soaking his clothes in a tub full of red-tinted water. He also found a box of .22 caliber ammunition on the sink. At that point, Moore took appellant into custody. Upon a search of the premises, police seized from the Kerr trailer appellant's wallet, the ammunition, the clothing in the tub, and a .22 caliber Jennings semi-automatic pistol, which they discovered behind the bathroom door. They also found and seized Whitey's wallet, which was in a wastebasket in the bathroom. When discovered, Whitey's wallet was empty, although an acquaintance of Whitey's testified that Whitey habitually carried about $1,000 with him. Police also found $1,257 in appellant's wallet.
 {¶ 5} The crime laboratory tested the bloodstains on the items seized by police and found the stains on appellant's jacket, jeans, boot, truck console, steering-wheel cover, driver's seat, driver's-side door, and door handle all to be consistent with Whitey's blood. One of the stains on the Jennings .22 pistol was also consistent with Whitey's blood.
 {¶ 6} Appellant was indicted on two counts of aggravated murder, one under R.C. 2903.01(A) (prior calculation and design) and one under R.C. 2903.01(B) (felony-murder), each count carrying a death specification for felony-murder (R.C.2929.04[A][7]) and the first count also carrying a specification for murder for hire (R.C. 2929.03[A][2]). He was also indicted on one theft count and two aggravated robbery counts. At the close of the evidence, the trial court granted appellant's Crim.R. 29 motion for judgment of acquittal on the murder-for-hire specification. A jury then found appellant guilty on all counts and all remaining specifications and, after a penalty hearing, recommended death. The trial judge merged the two aggravated murder counts and imposed a death sentence.
 {¶ 7} On May 29, 1997, Joy Hoop was indicted on four counts alleging her participation in aggravated murder, with two death penalty specifications. The first specification charged that the aggravated murder was a murder for hire (R.C. 2929.04[A][2]). The second specification charged that the aggravated murder was done during the commission of or in flight from the commission of an aggravated robbery, and that appellant was the principal offender or that the aggravated murder was committed with prior calculation and design (R.C. 2929.04[A][7]).
 {¶ 8} Hoop filed a motion seeking to require that the state choose between the alternative allegations in the second specification. The trial court granted the motion and the state chose to proceed on the alternative that the aggravated murder was committed during the commission of or in flight from the commission of an aggravated robbery and with prior calculation and design. That part of the specification which alleged that appellant was the principal offender was dismissed.
 {¶ 9} At Hoop's trial, the state elicited testimony from Thomas Merriman, an acquaintance of appellant. He testified that Hoop told her that appellant "didn't finish the job and she had to go out and shoot [Whitey] a second time in the head." Based on this testimony, appellant filed a motion for a new trial. He alleged that the witness and his testimony was not disclosed to him, or known by him, at the time of his trial, and in fact did not become known to him until the conclusion of Hoop's trial. He argued that the testimony contradicts his conviction with a specification that he was the principal offender, and that he is thus entitled to a new trial.
 {¶ 10} The trial court denied the motion, concluding that the newly discovered evidence did not disclose a strong possibility that the result of a new trial would likely be different. He appeals raising one assignment of error in which he alleges that the trial court erred in denying his motion for a new trial.
 {¶ 11} In order to be granted a new trial on the basis of newly-discovered evidence, the defendant must show that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. State v. Petro (1947), 148 Ohio St. 505, syllabus.
 {¶ 12} "Where the case has been tried to a jury, the task for the trial judge is to determine whether it is likely that the jury would have reached a different verdict if it had considered the newly discovered evidence." Dayton v. Martin (1987),43 Ohio App.3d 87, 90. "The task of the reviewing court is then to determine whether the trial judge abused its discretion in making this determination." Id. Likewise, "the decision on whether the motion warrants a hearing also lies within the trial court's discretion." State v. Smith (1986), 30 Ohio App.3d 138, 139. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 158. "When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court." State v. Morton, Summit App. No. 21047, 2002-Ohio-6458, at ¶ 42, citing Pons v. Ohio State Med. Bd.,66 Ohio St.3d 619, 621, 1993-Ohio-122.
 {¶ 13} We note that the trial court properly found that the newly-discovered evidence met the second and third criteria underPetro as Merriman's statements were not discovered until Hoop's trial, several months after appellant's trial. However, "the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish materiality in the constitutional sense." State v. Agurs (1976), 427 U.S. 104, 109-110,96 S.Ct. 2392. Where there is "no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." Id. at 112-113; State v. Baker
(Oct. 15, 2001), Clinton App. No. CA2000-08-018.
 {¶ 14} In the present matter, there is no reasonable doubt regarding appellant's guilt, even considering the new evidence. Appellant was overheard saying he would kill Whitey. He was followed from the scene of the crime by a police officer, and was later found soaking blood stained clothes in a bathtub. Police found Whitey's wallet, the murder weapon and ammunition nearby. Bloodstains consistent with the victim's blood were found on appellant's clothing and in his truck. Evidence further indicated that he had recently fired a gun. At trial, appellant never raised the defense that he now posits, that he did not fire the fatal shot but instead abandoned his attempt to kill Whitey after firing once.
 {¶ 15} Considering this same evidence on appeal of the denial of appellant's petition for postconviction relief, this court stated: "the State's presentation of varying theories in different cases involving individual defendants does not rise to the crest of violating basic tenets and consideration of due process. * * * [T]here were no operative facts set forth to demonstrate that the presentation of a different theory of the crime in the trial of the co-defendant, Joy Hoop, prejudiced appellant." State v. Lindsey, Brown App. No. CA2002-02-002, 2003-Ohio-811, ¶ 33-34 (citations omitted).
 {¶ 16} Reviewing this same evidence with regard to appellant's motion for a new trial leads to the same conclusion. Appellant has failed to present evidence disclosing a strong probability that the result of a new trial, if granted, would be different. We therefore conclude that the trial court did not abuse its discretion by denying the motion for a new trial without a hearing. The assignment of error is overruled.
Judgment affirmed.
Young, P.J., and Powell, J., concur.